## HANRICK v. BARTON.

1. In Texas titles, before the adoption of the common law, a title of possession issued to an attorney in fact of the original grantee for the latter's use, vested the title in such grantee, and not in the attorney.
2. The original grant by the government was regarded as the foundation of the title; and the extension of that title upon specific lands, if made for the benefit of the original grantee, vested title in him.
3. The papers of the original title, from the government grant to the title of possession (called the espediente), properly belong to the archives of the General Land Office, and include a power of attorney from the grantee to obtain the possessory title.
4. Certified copies of such papers from the General Land Office are admissible in evidence, and are then evidence for all purposes for which the originals could be adduced.
5. Under the Mexican-Spanish law formerly prevailing in Texas, a power of attorney to sell and convey land was properly executed by the attorney in his own name, specifying that he executed the deed as attorney for his principal.
6. In order to render a certified copy of a deed admissible in evidence in Texas, it must be filed with the papers in the cause at least three days before the commencement of the trial; but the affidavit of loss of the original deed need not be filed until the trial.

ERROR to the Circuit Court for the Western District of Texas.

Edward Hanrick, a citizen of Alabama, in December, 1860, brought two actions of trespass to try title, in the nature of actions of ejectment, in the District Court of the United States for the Western District of Texas, for the re-

covery of eleven leagues of land in Falls County, in that State, alleged to have been granted by the proper officers of the State of Coahuila and Texas to one Atanacio de la Serda, and claimed by the plaintiff as owner in fee. The original plaintiff having died, the present plaintiff was admitted to prosecute the action as his administrator and only heir.

The defendants pleaded:

1st. The general issue ;

2d. Title under one Thomas J. Chambers; and

3d. The statutes of limitation of three and ten years.

A jury being waived, the two causes were consolidated and tried by the court as one cause, in July, 1870, and the court found and decided that the plaintiff had failed to make out legal title to the land in controversy in Edward Hanrick, and gave judgment for the defendants, without passing upon the issues raised on the statutes of limitation. The case was brought here by the plaintiff upon certain bills of exception taken during the trial of the cause, showing rulings of the court adverse to the plaintiff, which were material to the result, and which, he alleged, were erroneous.

*Mr. Conway Robinson, with whom was Mr. W. G. Hale, for the plaintiff in error ; Mr. G. F. More, contra.*

Mr. Justice BRADLEY stated the case in its different parts, as it arose on the exceptions, in their order, and delivered the opinion of the court.

The first and second bills relate to certain rulings upon replications proffered by the plaintiff to the pleas of the statute of limitations. As these became immaterial from the final view which the court below took of the case, which relieved the defendants from relying on the statutes of limitation, we will consider the other bills:

The plaintiff produced in evidence a properly certified and translated copy from the General Land Office of the following title-papers, on which he relied for showing a grant of the land in controversy to Atanacio de la Serda.

1st. A petition by La Serda, described as a native and

resident of Nacogdoches, to the governor, dated October 29th, 1830, praying for a grant of eleven leagues of land in the department.

2d. A grant by Governor Letona to La Serda, dated at Leona Vicario, March 11th, 1831, for eleven leagues of vacant land of the State, subject to the usual conditions of colonization then in force.

3d. A blank unsigned application to the alcalde of Austin, dated Austin, ——, 1833, purporting to be made by Matthew R. Williams, attorney in fact of Atanacio de la Serda, stating the grant made to him, and praying that title of possession of the same might be made for eleven leagues of land on the left bank of the river Brazos, within the colony of Austin and Williams.

4th. An order of Lesassier, alcalde of Austin, dated October, 1833, referring the application to Austin and Williams for their approval, and if they approved it, referring it to the principal surveyor, to survey the land.

5th. Consent of Austin and Williams, dated ——, 1833.

6th. Survey by F. W. Johnson of the eleven leagues in controversy for the attorney in fact of Atanacio de la Serda; the survey being addressed to the alcalde.

7th. A grant or title of possession, purporting to be made by Luke Lesassier, alcalde of Austin, acting as a commissioner under authority of the government, by which (as the grant recites) in consideration of the sale made to Atanacio de la Serda (referring to the particulars of the same), exhibited by the citizen Matthew R. Williams, attorney in fact of said La Serda, he, Lesassier, declared as follows, to wit:

"'I grant to and put the aforesaid attorney in fact of citizen Atanacio de la Serda into real, actual, corporal, and virtual possession of eleven leagues of land, the same which he prayed for and which the government sold him, situate on the left margin of the river Brazos, &c."

Describing the eleven leagues in controversy; and after specifying the terms and conditions to be complied with, concluding thus:

"Therefore, by virtue of the authority in me vested by the before-mentioned decree, &c., I issue this present title, and do ordain that an authentic copy thereof be taken and delivered to the party interested, for the purpose that he may own, use, and enjoy the land which has been sold to him, for himself, for his children, his heirs, or successors, &c."

The plaintiff then offered in evidence a deed, dated the 8th day of July, 1838, which, it is conceded, was sufficiently authenticated, and by which the said Matthew R. Williams, as attorney in fact of La Serda (but in his own name as such attorney), conveyed or attempted to convey the land in question to Asa Hoxey and R. M. Williamson, from whom the plaintiff deduced title to himself. To the admission of this deed in evidence the defendants objected, and it was excluded by the court, which ruling constitutes the ground of the first part of the third bill of exceptions.

The principal objections urged against this deed were, *first,* that the plaintiff had not shown any valid and legal authority from La Serda to Williams to sell and convey the land; *secondly,* that the deed was not a valid execution of the power, if such a power existed. Other objections were assigned, from which it appears that the defendants had contended that the title of possession was a grant to Williams, the alleged attorney, and not to La Serda, but that the court had overruled the objection, and had held that it was a grant to La Serda. If the grant enured to Williams he would have needed no power from La Serda to make the deed in question; but if it enured to La Serda, of course such a power was necessary. It is essential, therefore, to determine the effect of the title of possession issued by the alcalde, Lesassier.

This grant, if judged by common-law methods of assurance, is not expressed in the most apt terms. At first blush it seems to convey the land to the attorney in fact of La Serda, and not to La Serda himself. But it seems to be in the usual form used in such cases.* In construing Mexican

* See Hancock *v.* McKinney, 7 Texas Reports, 384, where the same form is used.

titles in Texas much greater stress seems to be laid on the original grant made by the governor than is laid by us on the ordinary land-warrant in government titles. In the land system of the United States the final patent is the all-controlling document as to the legal title. But in Texas titles the final "extension of title," as it is called, which is usually issued by a local commissioner appointed for that purpose (in this case the alcalde of Austin), is regarded more as a certificate of location, issued for the purpose of designating the particular land on which the original grant is to take effect than as an independent grant. In *Clay* v. *Holbert*,* the court, speaking of a title very similar to that under consideration, says: "It is believed that, this being a sale of land, not made by the commissioner, but by the executive, so far as the right of the purchaser is concerned, the commissioner's duty did not begin until after the right had been acquired by purchase from the State; and it relates then mainly to the reference to a surveyor, approval of the survey, and putting the purchaser in possession; and his [the commissioner's] title was only evidence of the right acquired by the purchaser, and did not give or convey the right, because the right had accrued by the act of the State executive." It is true, the title of possession is necessary to render the original title perfect; for until it issues the original grant does not attach itself to any specific land. But when it is issued the original title is said to be extended upon the particular land designated.

When, therefore, a grant from the governor to La Serda is produced, together with a survey made at the instance of a person who assumes to act as his attorney in fact; and a title of possession is then shown, professing to put the attorney in fact, as such, in possession of the land surveyed, and declaring that said title was issued in order that the party interested might own and enjoy the land which had been sold to him, for himself, his children, his heirs and successors or assigns, such title must be deemed to be issued for

---

* 14 Texas Reports, 202.

the benefit of, and to enure to, the original grantee. Its legal effect must be to perfect title in him. And in so holding, we think that the court below was right. We do not mean to say that the original grantee, if not prohibited by law, might not have assigned his inchoate title to a third person; nor that the title might not, by a grant in proper form, have been perfected in such assignee; but we think that the legal effect of the extension of title in this case, by the document offered in evidence, was to perfect La Serda's title, and not to vest title in Williams.

This conclusion renders it necessary that Williams should have had a power of attorney from La Serda, in order that a deed executed by him should have any efficacy in transferring the title to another. But no such power was among the papers previously offered in evidence, at least so far as appears by the bill of exceptions now under consideration.

But there was attached to the deed offered in evidence, and offered with it, a document, consisting of a copy of the original title-papers in Spanish, accompanied with an English translation, duly certified by the translator and the Commissioner of the General Land Office to be a true and correct translation from the original Spanish title-papers in said office. The papers thus certified were the title-papers previously given in evidence, and two other documents in addition thereto, namely: first, a power of attorney from La Serda to one J. S. Roberts, dated July 20th, 1832, authorizing Roberts to obtain possession and title of the eleven leagues granted to La Serda, as before stated, and to sell and convey the same, and to appoint one or more substitutes in his place; secondly, the other additional document was an act executed by J. S. Roberts, and dated December 10th, 1832, whereby he substituted Matthew R. Williams in his place as attorney of La Serda.

It is apparent that if this power of attorney and act of substitution were properly authenticated, they gave Williams full power to sell and convey, as well as acquire possession. The counsel of the defendants contends that they were not properly authenticated; that they were private

documents and no part of the original title; and, therefore, did not properly belong to the archives of the Land Office, but to the officer before whom, or clerk of the county in which they were executed (in this case Nacogdoches), and therefore that the certificate of the General Land Office could not give authenticity to the copies. His proposition is, "that copies of papers in the Land Office are not evidence unless said papers properly form a part of the said archives of said office." This general proposition is undoubtedly correct. Private deeds, conveyances, or mortgages executed before a notary between citizens, and having only a private effect and operation, could not be regarded as belonging to the public archives, but the originals or protocols would be preserved by the notary, or officer acting as such, or turned over to the county clerk having custody of the county records. But the set of documents which make up the original title-papers of any tract of land, from the original petition of the grantee to the final extension of title (usually called in Mexico the "espediente"), do belong to the public archives. They either have to pass under the examination and approval of the different officials concerned in granting out the public lands as the basis of their acts, or they are the very acts themselves of those officials, constituting the preliminary and final acts of title, demonstrating for all future time the alienation of a specific portion of the public domain. Now, although some of these documents may contain private stipulations between the parties concerned, yet their proper place of custody is the General Land Office, and not private or local offices; and, if they belong to the archives, certified copies of them are evidence. The original act of 1836 establishing the General Land Office declares (sec. 6) that the Commissioner of the General Land Office shall be entitled to the custody of all the records, books, and papers in any way appertaining to the lands of the Republic, and that may now be in the care or possession of all empresarios, political chiefs, commissarios, or commissioners for issuing land-titles, or any other person; and that the said records, books, and papers shall become and be deemed the

books and papers of the said office. The fifteenth section required all local registers, after recording powers of attorney, or any other instrument of writing connected with the grant of orders of survey, to forward them to the Commissioner of the General Land Office, showing that such instruments were regarded as belonging to that office. The power of attorney in the present case was specially referred to and acted on in the final grant of title, as appears by its recitals, and became a paper necessary for the Land Office to have in its possession in order to see the ground for extending the title to Williams as the attorney in fact of La Serda. Being thus an integral part of the original title, and belonging to the archives of the General Land Office, it was properly authenticated for all purposes by the certificates of the translator and commissioner. The Land Office Act of December 14th, 1837, declared that certified copies of any records, books, or papers belonging to the office, should be competent evidence in all cases where the originals could be evidence.* The subsequent acts on the subject are equally explicit.†

The next objection made by the defendants is, that although the power should be deemed sufficient, the deed was not a valid execution of the power, being a conveyance by Williams in his own name as attorney of La Serda, and not a conveyance in the name of La Serda by his attorney, Williams. The defendants' counsel is correct in saying that this would have been defective at common law.‡ But in Texas, at the time when this deed was executed, the Spanish law with respect to transfers of title still prevailed. The common law was adopted in its application to juries and evidence on December 20th, 1836, but was not generally adopted as the rule of decision in other respects until January 20th, 1840.§ By the Mexico-Spanish law, prevailing in Texas in 1838, the deed was framed and executed in the ordinary legal form for transferring the title of the con-

---

* Paschal's Digest, Art. 4086.        † Ib., Arts. 4088, 3715.
‡ Story on Agency, §§ 147, 148.        § Paschal's Digest, Arts. 3706, 978.

stituent or party who executed the power of attorney. Several instances of such deeds are to be found in the Texas reports, and passed without objection. The form of a deed to be executed by an attorney, as prescribed by the Spanish Partidas, L. 61, Tit. 18, Partidas 3d, is given in 16 Texas, 68, as follows:

" Know all men who may see these presents, that A. B., as attorney of C. D., specially authorized by him to sell, &c., to receive the purchase-money, and in his name to covenant, &c., does sell, &c."

Such instruments are deemed the act of the principal and not of the agent. This being the law of Texas when the deed was executed, it was sufficient, in form and mode of execution, to pass a perfect title at that time from La Serda to the grantees, for it is well settled that if a title once becomes vested no subsequent change of laws as to forms or solemnities of conveyance will divest it.

The other objections raised to the admission of the deed are all involved in those already noticed, and need no further examination.

The position so elaborately argued by the defendants' counsel, to the effect that the title-papers appear never to have been completed, no evidence having been given to show that a *testimonio* was ever issued, or that the final title of possession ever became an executed instrument, cannot be considered on this writ of error. We have no means of knowing what evidence may have been offered to sustain the title-papers admitted in evidence, except from the defendants' bill of exceptions, and that is not now properly before us.

Our conclusion on the first part of the third bill of exceptions is, that there was error in rejecting the deed of 8th July, 1838, executed by Matthew R. Williams, as attorney in fact of La Serda.

In the second and third parts of the same bill, the plaintiff, after satisfactorily proving, by affidavits, the loss of a certain deed executed by Matthew R. Williams, as attorney

in fact, and in the name of La Serda, dated 18th of May, 1850, whereby La Serda, by his said attorney, conveyed the land in controversy to Edward Hanrick, the original plaintiff in this action, and after putting in evidence the title-papers of La Serda, as stated in the first part of the bill, and after the rejection of the deed of 8th July, 1838, and the documents thereto attached, offered in evidence a duly certified copy of the said deed of May 18th, 1850, from the records of Falls County, Texas, which copy exhibited an acknowledgment before a notary public of the execution of the deed by Williams, as well as proof of its execution by one of the subscribing witnesses. The certified copy was objected to because the plaintiff did not file among the papers of the suit, three days before the trial, an affidavit of the loss of the deed; and the court excluded it on this ground.

The statute on this subject, passed 18th May, 1846 (omitting words immaterial to this case), is as follows :*

"Every instrument permitted or required to be recorded in the office of the clerk of the county court, and which has been so recorded after being proven or acknowledged in the manner provided by law, shall be admitted in evidence without proving its execution. Provided that the party who wishes to give it in evidence shall file the same among the papers of the suit three days before the commencement of the trial, and give notice to the opposite party. And *whenever* any party to a suit shall file among the papers of the suit an affidavit stating that any instrument recorded as aforesaid has been lost, or that he cannot procure the original, a certified copy of the record of such instrument shall be admitted in like manner as the original could be."

The plaintiff had duly filed among the papers of the suit more than three days before the commencement of the trial, the certified copy of the deed now offered; but did not file any affidavit of the loss of the original deed; and this was the

---

* Paschal's Digest, Article 3716.

ground of objection. It is sufficient to say that the statute does not require the proof of loss to be filed before the trial. It declares that "*whenever*" a party shall file an affidavit stating that an instrument has been lost, a certified copy shall be admitted the same as the original could be. It seems to us, that if the certified copy is filed three days before the commencement of the trial, with notice that the party intends to offer it in evidence (as was done in this case), it is a sufficient compliance with the statute. It is conceded that the Texas reports do not furnish any authority directly on the point; but it is understood that the practice corresponds to the course followed in this case. At all events, the statute seems to require nothing more. We think, therefore, that the certified copy of this deed was improperly excluded, on the ground assigned for its exclusion. Of course it could not be sustained as evidence in the cause, unless it was proven that Williams had authority to act for La Serda.

The fourth bill of exceptions is essentially the same as the first part of the third, showing a renewed offer of the deed of 1838, after proving the signature of the magistrate before whom it was acknowledged, and tracing title from Hoxey and Williamson to Hanrick. It needs no further discussion.

The fifth bill does not show any erroneous ruling. It presents an offer by the plaintiff from the Land Office, of a document purporting to be an agreement by La Serda to sell the eleven leagues of land to Roberts as soon as possession should be obtained, under a penalty of $10,000, with a mortgage of the grant, in case of failure to perform; and also an offer of another document whereby Roberts assigned this agreement to one Peebles; and, thirdly, a release from Peebles to Edward Hanrick.

A conclusive objection to these documents (which was made by the defendants) was, that they transferred no title. They were mere agreements. Other objections were raised against their admission, which it is not necessary to discuss.

Statement of the case.

The conclusion to which we have come is, that the judgment must be REVERSED, with directions to award a

VENIRE DE NOVO.