WILLIAM GAINER ET AL. V. WILLIAM COTTON ET AL.

1. TESTIMONIO—HOW PROVED FOR RECORD.—A testimonio, or second original, is properly admissible to record upon the acknowledgment of his signature by the officer before and jointly with whom the protocol was executed, and by whom the testimonio was made and delivered to the party interested, to whom it was to serve for title.
2. TESTIMONIO WHEN RECORDED EVIDENCE AS DEED.—Such instrument, when duly recorded, is admissible in evidence under the statute admitting deeds and other instruments, &c., when duly recorded, and notice given as required by statute.
3. CASES APPROVED.—Edwards v. James, 7 Tex., 372; and Beaty v. Whitaker, 23 Tex., 526.
4. AFFIDAVIT ATTACKING GENUINENESS OF RECORDED INSTRU-

MENT.—Such affidavit is not strengthened by an additional affidavit attacking the genuineness of the certificate of acknowledgment, or of proof of the instrument, by virtue of which it is allowed to be recorded. The disproof of the genuineness of such certificate would be a fact bearing upon the genuineness, on the issue before the jury.

5. PROOF OF INSTRUMENT SO ATTACKED.—Such instrument so attacked, when produced and freed from suspicion, may be proven in any way known to the common law; by proof of signature of one or both witnesses, they being dead, or other reason for their absence being shown; or it may be proven as an ancient document.

6. EVIDENCE—PRACTICE.—The suspicion from which the instrument so produced must be freed before the execution of such instrument may be proved by evidence of signature of subscribing witnesses, must arise from something apparent on the face of the instrument,—something of which the judge can take notice, and upon which he can act; not such suspicion as may be raised by extraneous testimony, introduced by the adverse party.

7. EVIDENCE—ANCIENT DOCUMENT.—A title bond thirty years old, produced from the proper custody, without apparent alteration, shown to have been in the possession of the obligee within a few months of its date, recorded soon after its date in the proper county, acted upon and possession of the land taken and held by the obligee for more than twenty years, was admissible in evidence without further testimony.

8. EVIDENCE.—A title bond purporting to have been signed by the husband and wife, and admitted in evidence on proof of the signatures of the subscribing witnesses thereto, and admitted as an ancient document, was attacked by testimony tending to prove that the wife's name was a forgery,—goes to the jury with the testimony as to the forgery of the wife's name, as evidence upon the question of genuineness of that of the husband; the husband having had the right to dispose of the land without being joined by the wife.

9. POSSESSION UNDER TITLE BOND.—Possession of land was taken in 1851, after a deed thereto had been executed by an attorney in fact of the grantee. A title bond therefor had been made for an undivided interest in 1837. In a suit by heirs of grantee against those holding under the bond and deed: *Held,* That whether the attorney in fact was authorized or not to make the deed, was immaterial, so far as the possession under the bond was concerned; for if the attorney had authority to act, his deed was a satisfaction of the bond; and if he had not, then the bond was unsatisfied, and the possession would be applied to the bond

10. EQUITABLE TITLE.—A title bond executed in 1837, acknowledging full payment for the land, and reciting an absolute contract for the sale of the land, conferred a title to the obligee, not affected by the

subsequent act adopting the common law. Any deed executed would only give more satisfactory evidence of the right, but would not increase or alter the estate in the land had by the obligee.

11. NOTICE TO PRODUCE ORIGINAL—EVIDENCE, &c.—A certified copy of a deed made to plaintiffs' ancestor for a town lot, reciting a money consideration, but of even date with a bond for title from said ancestor for part of the land sued for, the deed being referred to in the bond, and its consideration recited as the lot so conveyed, is relevant; and notice having been giving to plaintiffs' attorneys, and to one of plaintiffs, to produce the original, and no objection having been made to the notice as giving insufficient time to produce it, the copy was competent testimony.

12. MISTAKE IN DESCRIPTION OF LAND.—See facts held sufficient to authorize a verdict finding that a conveyance for an undivided half of the east half, meant to convey such interest in the west half of a described league of land.

APPEAL from Freestone. Tried below before Hon. J. B. Rector.

This was an action of trespass to try title in the ordinary form, brought March, 1873, in the District Court of Freestone county, by William T. Gainer and others, who are appellants, against William Collins and others, who are appellees, for the league of land upon which the town of Fairfield is situated, originally granted to Redin Gainer.

The plaintiffs claimed as children and heirs of the grantee, Redin Gainer, and his wife, Amelia Gainer.

The grant was made July 9, 1835, and it was community property. The wife, Amelia Gainer, died December 18, 1842, in Nacogdoches county, leaving no community debts.

Under appropriate pleadings, the defendants set up title to the land sued for, under three instruments relied on as conveyances, made by Redin Gainer before the death of his wife.

1. A deed for the east half of the grant, of date July 26, 1836, and made to Sparks and Thorn. The nature of this conveyance, and the testimony adduced, are carefully given in the opinion.

2. A title bond bearing date November 27, 1837, signed

by Redin Gainer and Permelia Gainer, she making her mark. and to David H. Love for one-half of his, the said Gainer's, half league of land in Burnett's colony, &c.

To the admission of this, proper objection was made; and touching it, on August 11, 1874, defendant William Gainer made affidavit that it "had been carefully and critically examined by him, and that he believes the said title bond to be forged; * * * and that he believes the pretended certificate of authentication attached to said pretended title bond * * * is also a forged instrument of writing."

The defendants then proved the handwriting of the subscribing witnesses thereto, and that they were both dead, and that the certificate of H. Owen on the same (certificate of authentication) was in the handwriting of said Owen, who lived in Robertson county, Texas.

Defendants proved, further, by one John Karner, that he had had possession of the title bond since 1847; that witness received it from D. H. Love, the obligee; that Love took possession of the northwest quarter of the Gainer league in 1851. Witness has had possession of the title bond since 1847. In 1848, witness, by mistake, made a deed to Love for part of the east half. At that time, witness received the title bond from Love.

Upon this proof, the judge on the trial admitted the bond in evidence, as follows:

"Know all men by these presents, that I, Redin Gainer, of the Republic of Texas and county of San Augustine, am held and firmly bound unto David H. Love, of the republic and county aforesaid, in the penal sum of twelve hundred dollars, good and lawful money of said republic, the payment of which I bind myself, my heirs, executors, and administrators, &c., firmly by these presents. Dated the 27th day of November, 1837, under my hand and seal.

"The condition of this obligation is such, that whereas the said David H. Love has this day sold and transferred unto the above-bound Gainer his lot and shop in the town of San

Augustine, said lot known on the plat of said town as number 216, as will more fully appear by having reference to said transfer, the same bearing even date with this obligation: Now, if the said Gainer shall make, or cause to be made, unto the said Love, or his assigns, a good and sufficient title in fee-simple to the one-half of his, the said Gainer's, half league of land, situated in Burnett's colony, on the west side of the Trinity river, as will more fully appear by reference to the title issued to said Gainer by George A. Nixon, Commissioner, said half league to be divided into four equal parts, and the shares to be drawn for, the said Gainer and Love, mutually: Now, if the said Gainer shall and will truly make, or cause to be made, unto the said Love, or his assigns, a good and sufficient deed or deeds to the shares of said land as soon as thereunto requested by the said Love, then and in that case this obligation shall be void; otherwise to remain in full force, in law and equity. And further, I, the said Redin Gainer, do by these presents bar all law and parts of law in my favor to the full recovery of this my obligation, if I fail to do and perform all and singular the covenants therein expressed towards perfecting a title in fee-simple to the said Love, to be signed by myself and my wife; and in case of performing the same, this obligation to be void, and of no effect. Given under my hand and seal this 27th day of November, A. D. 1837.

(Signed)      "REDIN GAINER.          [L. S.]

"PERMELIA + GAINER. [L. S.]

"Attest: William M. Love, John G. Love."

"REPUBLIC OF TEXAS,  }
      "*Robertson County.* }

"Personally appeared before me, Harrison Owen, county clerk and recorder in and for said county, William M. Love, who, after being duly sworn, saith that he saw Redin Gainer and Permelia, his wife, sign, seal, and deliver the foregoing, and acknowledge the same to be their own free act for the purposes therein contained.

" Given under my hand and private seal, having no seal of office, this 20th day of December, 1843.

                                        "H. OWEN,
[L. S.]             .            "*Recorder of Robertson County.*"

(This had been recorded in Robertson county, and recently in Freestone county.)

The objections urged against the title bond, and which were overruled, were—

1. It is a stale demand, and barred by the statute of limitations, and the evidence shows that no possession was taken under it; that possession was not taken until 1851 by D. H. Love, and that that possession was not under the title bond, but under the deed from John Karner to David H. Love, dated May 31, 1851.

2. Because the title bond was not free from suspicion, Permelia Gainer purporting to sign it by her mark, when the testimony shows that she could write her own signature, and that the testimony shows that her name was Amelia, and not Permelia, and that she was never known or called by any other name than Amelia or Milly.

3. Because proof of the handwriting of the two subscribing witnesses is not sufficient to prove up the instrument.

4. Because the affidavit of one of the defendants, above given, attacking the genuineness of the signatures of the makers, and of the certificate of authentication, . . . " requires other proof of its execution than the proof of the handwriting of the attesting witnesses."

The court then, over objections, admitted in evidence a certified copy of the deed from D. H. Love to Redin Gainer for the lot number 216, in San Augustine, as stated in the title bond aforesaid of same date.

To the copy, it was objected, because the notice to produce it had not been served upon the attorneys of plaintiff until August 10, 1874, (the trial was had August 22, 1874,) after the term of the court had commenced, and after said attorneys, who reside in Austin, had reached the place of trial,

and after William T. Gainer, who resides in Jackson, had left the place of trial; and for other reasons not discussed in the opinion.

Defendants also read in evidence a deed purporting to be made by John Karner, as agent for Redin Gainer, for the northwest corner of the Gainer league of land, of date 31st of May, 1851, over objections, (1) that Karner had no authority; (2) because no possession had been taken of said northwest quarter anterior to the deed. Prior to this, Karner had testified that he had deeded by mistake the northeast corner, and had taken up the title bond, &c.

The third deed from Redin Gainer, relied on by defendants, and read in evidence, was executed April 17, 1840, to Matthew Cartwright, and purported to convey "one-half of the east half a league of land lying west of the Trinity, and being known as a league granted to me, said Redin Gainer, as a colonist and citizen of the State of Coahuila and Texas, by Commissioner George A. Nixon, for the colony of David G. Burnett, said half league of to be divided according to value and quality."

The court submitted the question of the locality of the land as purchased by Cartwright, and a synopsis of the testimony is given in the opinion; it being insisted by defendants that the intent was to convey an interest in the west half instead of the east. The statement of facts and bills of exceptions to evidence admitted, cover, in the transcript, 300 pages. The opinion can be understood from the abstract given here.

*Archer & Wildy* and *D. E. Thomas*, for appellants.—There are many authorities in our own reports going to show that if the title bond offered in evidence in this cause by the defense, and admitted over the objections of plaintiffs, was sued upon for specific performance by the defendants, the suit could not be maintained, as the bond would be considered a stale demand—more than ten years having elapsed from the time

of defendants' cause of action accrued upon the bond. (De Cordova v. Smith, 9 Tex., 144; DeWitt v. Miller, 9 Tex., 246, 247; Smith v. Hampton, 13 Tex., 463; Glasscock v. Nelson, 26 Tex., 152.)

Under article 4621 of Paschal's Digest, D. H. Love was barred from his right to enter upon the land in controversy, as the entry was not made within ten years from the date of the bond, or within ten years from his right to enter.

The ninth instruction was wrong, for the reason that it assumed that there was evidence tending to show that Gainer had knowledge of the partition made by Karner, and that he afterwards acquiesced in it, when all the evidence upon the subject shows that Gainer did not know anything about the partition of the land having been made, and that he did not ratify it.   There is no principle better settled by the decisions of this court than that the charge of the court must be applicable to the case under investigation as made out by the proof, and if there is no evidence upon a certain point, the court has no right to give any instructions upon that point. (Scranton v. Tilley, 16 Tex., 194; Hancock v. Horan, 15 Tex., 511; Hardy v. De Leon, 5 Tex., 245; Wheeler v. Moody, 9 Tex., 378; Hagerty v. Scott, 10 Tex., 525; Patton v. Gregory, 21 Tex., 513; Smithwick v. Andrews, 24 Tex., 494; Garrett v. Chambliss, 24 Tex., 619; Norwood v. Boon, 21 Tex., 593.)

*Bradley & Kirven*, L. J. *Farrar*, and *Likens & Stewart*, for appellees.—The payment of the purchase-money by D. H. Love, his possession, the payment of taxes on the land, the erection of permanent and valuable improvements thereon, and his adverse and notorious claim, are all circumstances which would authorize or justify a decree against the Gainer heirs of specific performance of the title bond, if this were a suit of that kind.   (See Vardeman v. Lawson, 17 Tex., 10; 2 Story's Eq. Jur., 715; Hemming v. Zimmerschitte, 4 Tex., 159, and 11 Tex., 237; Holman v. Criswell, 15 Tex., 394; Stramler v. Coe, 15 Tex., 211; Barbour v. Whitlock, 4 Mon-

roe, 180, 194, 199; Newsom v. Davis, 20 Tex., 419; Sugden's
Vendors, 160; Kane v. Bloodgood, 7 Johns. Ch., 121.)

This is properly and essentially an action of trespass to try
title, and the plaintiffs must recover upon the strength of
their own title, and not upon the weakness of the title of
defendants.   (Hughes v. Lane, 6 Tex., 289.)

The bond for title of Redin Gainer certainly conveys the
equitable title to D. H. Love, if not the legal title, and would
be sufficient evidence of title upon which to maintain the ac-
tion of trespass to try title on the part of the defendants, or
to resist the same action.   (Paschal's Dig., art. 5303; Easter-
ling v. Blythe, 7 Tex., 210; Miller v. Alexander, 8 Tex.,
36.)

The superior equitable or legal outstanding title in some
one else than Redin Gainer, defeats the action of the plain-
tiffs.   Such a title, we insist, is furnished by the bond for
title in this case.   (See the last cases cited above, with the
following additional cases: Walker v. Howard, 34 Tex., 478;
Burleson v. Burleson, 28 Tex., 383; Martin v. Parker, 26
Tex., 253; Kinney v. Vinson, 32 Tex., 125.)

This is not the first instance of the kind, when one who is
able to sign his or her name, either because of an inability to
write the signature well, or for some other reason, prefers to
sign with a mark.   The fact of signing with a mark shows
that Mrs. Gainer did not write the name herself, and if her
name was in fact Amelia instead of Permelia, the mistake of
writing Permelia instead of Amelia is a very natural one.
If the bond had purported to be signed by Mrs. Gainer her-
self, and was signed Permelia, when her name in fact was
Amelia, this would naturally have excited suspicion.   That
suspicion is removed, however, when the bond shows that
Mrs. Gainer used a mark in signing the bond, and that some
one else wrote her name for her.   It is suggested, in this
connection, that Milly is a greater departure from Amelia
than Permelia is from Amelia; and the evidence shows that
she was indifferently called Amelia and Milly.   This would

be a case of *idem sonans*, if Mrs. Gainer were indicted under the name of Permelia Gainer.

If the bond for title be free from suspicion in other respects, we insist that it would be sufficient to convey all the title of Gainer, without Mrs. Gainer joining the conveyance. The league of land was community property. (Yates *v.* Houston, 3 Tex., 452; Commentaries of Tlamas on the 16th and 17th laws of Toro.)

The husband, Redin Gainer, had the right and authority, under the Spanish law, to dispose of the land in question. (7 White's Recop., 63; Scott *v.* Maynard, Dallam's Dig., 561.)

Article 4642 of Paschal's Digest is a statutory affirmance, or recognition of this authority of the husband to convey the community property, and is the law to-day. Further, at the date of the execution of the bond, it was not necessary that there should have been a written instrument to evidence the sale made by Gainer, if the purchase-money was paid, and the sale was accompanied with possession. (Briscoe *v.* McDonough, 1 Tex.; 326; Munroe *v.* Searcy, 20 Tex., 348.)

In the case at bar, the evidence shows that both Gainer and his wife, and the subscribing witnesses to the bond, were dead. Clearly, the bond would have been admissible under these circumstances, if the appellees had not been met with the affidavit of forgery. The effect of this affidavit was simply to require proof of the execution of the bond, in the mode and manner required by law. (See Paschal's Dig., art. 3716; Jordan *v.* Robson, 27 Tex., 615; Younge *v.* Gilbeau, 3 Wall., 640.)

What was the mode of proof prescribed by law under the circumstances of the case? The death of the subscribing witnesses having been established, secondary evidence of the execution of the bond was rendered admissible, and to prove the handwriting of the subscribing witnesses was all that was necessary. "And this evidence," Mr. Greenleaf says, in the first volume of his work on Evidence, section 575, "is in general deemed sufficient to admit the instrument to be

read." (See, also, the authorities there referred to in Red-field's edition of Greenleaf, and 1 Starkie on Evidence, top page 379, and note "A.")

The affidavit of forgery filed by appellants also attacked the genuineness of the certificate of authentication by H. Owens, who was shown to be living. The court below permitted proof of the handwriting of Owens to repel the suspicion raised by the affidavit, holding that it was necessary to produce Owens to testify as to his handwriting. Proof of the handwriting of Owens by others than himself was primary. (See 2 Phillips on Evidence, with Owens', and Hill's, and Edwards' notes, top page 501, and note 480, and the authorities there referred to; and also page 507 of the same work, and note 482, and the authorities there referred to.)

The bond was properly admitted in evidence. (Portis v. Hill, 30 Tex., 561; Stroud v. Springfield, 28 Tex., 662; Mapes v. Leal's Heirs, 27 Tex., 349; Sample v. Robb, 4 Harr., (Penn.,) 307; Urket v. Coryell, 5 Watts & Serg., 60; Warren v. Lane, 5 S. & R., 60; 3 Bacon's Abr., 591, 592, and the authorities there referred to.)

The statement of facts shows that John Karner acted as the agent of Gainer in making the partition of the west half of the league. While this partition was executed in 1851 of the west half of the league, there had been an attempt to make this partition before, as is evidenced by the deed first made by Karner to Love, by mistake of the northeast quarter of the league, which had been already conveyed by Gainer to Sparks and Thorne. It was too late at the date of the institution of this suit to question the authority of the agent Karner to make this deed, or to make the partition. (See Watrous v. McGrew, 16 Tex., 513; Buhols v. Boudonsquite, 6 Mart., N. S., 153.)

It is objected that the notarial copy of the deed to Sparks and Thorne was inadmissible. We regard this question as too well established by the decisions of this court to admit of serious doubt. (See, upon this point, Moody v. Wheeler, 9

Tex., 372; Herndon v. Casiano, 7 Tex., 322; Paschal v. Perez, 7 Tex., 348; Houston v. Perry, 5 Tex., 462; Smith v. Townsend, Dallam's Dig., 569.)

Upon the principles announced in the cases of Watrous v. McGrew, 16 Tex., 513; Dailey v. Starr, 26 Tex., 562; Reese v. Medlock, 27 Tex., 120, the agency of Karner was sufficiently established; while we think the defective power of attorney to Karner from R. Gainer, in connection with the parol proof admitted, without objection, in regard to the agency of Karner, and his acts as such agent, in making a division of the west half of the league for the benefit of Love, should have been permitted to go to the jury.

MOORE, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by appellants against appellees, to recover a league of land in Freestone county, and upon which the town of Fairfield is situated, granted on the 9th day of July, 1835, by the Governor of Coahuila and Texas, to Redin Gainer.

Both appellants and appellees claim title under this grant.

Appellants claim one-half of the league as the community estate of their mother, Amelia Gainer, the wife of Redin Gainer at the date of the grant, who died December 18, 1842, and the other half as the property of their father, and cast upon his heirs on his death in the year 1855; while appellees maintain that the legal or equitable title to the entire league of land had been divested out of Gainer and wife,—first, by a deed from Redin Gainer to Richard Sparks and Frost Thorne, bearing date July 26, 1836, for the east half of said league; second, by title bond executed by Redin Gainer and Permelia Gainer, his wife, to D. H. Love, dated November 27, 1837, for an undivided half of his (Gainer's) remaining half of the league; third, by a deed from Redin Gainer to Matthew Cartwright, bearing date April 17, 1840, for, as appellees maintain, the remaining undivided fourth of said league then belonging to said Gainer, but which, as

they say, by mistake, was described in said deed as the half
of the east half of said league, and which said Gainer had
previously sold and conveyed to Sparks and Thorne. Ap-
pellees all claim under one or another of these conveyances;
and if they succeeded on the trial of the case in the District
Court in showing that, by them, the entire league of land
was divested out of the grantor, Redin Gainer, as they all
bear date prior to the death of his wife, unquestionably
neither she nor said Gainer had any interest whatever in
the land which could pass to the heirs; and whether appel-
lees have title or not, appellants cannot recover the land
from them; and any errors into which the court may have
fallen, if any can be found in the record, in its rulings, in
respect to the muniments of title upon which appellees sev-
erally relied to connect themselves with one or the other of
these conveyances from Gainer, is wholly immaterial. If,
on the other hand, the entire interest of both Gainer and
wife in the land was not divested out of them by these in-
struments, the judgment must unquestionably be reversed.

We need, therefore, only consider the assignments of error
which refer to the rulings of the court touching, or in some
way relating to, the admissibility in evidence of these instru-
ments, or the weight and effect to which they were entitled.

To establish a conveyance of the east half of the league by
Gainer to Sparks and Thorne, appellees offered, and the court
admitted in evidence, the testimonio of an act of sale to them,
passed, in the usual form of conveyances at that date, by
Gainer before Adolphus Sterne, judge of the first instance
for the jurisdiction of Nacogdoches, where the parties seem
to have then resided, and within which the land sued for
was then located. The execution of this instrument was ac-
knowledged by Sterne, by whom it was made, on the 12th
of March, 1838, before Charles S. Taylor, chief justice of
Nacogdoches county; and, on this acknowledgment, was re-
corded in Milam county March 24, 1838.

Quite a number of objections were made to the introduc-

8

tion of this instrument. All of them, however, were, as we think, properly overruled. Certainly it was frivolous to object to the introduction in evidence of a conveyance for one-half of the land for which the plaintiffs were suing, because it may have been· irrelevant in respect to the controversy as to the other part of the league. This, if true, would have been a matter for instruction to the jury.

The instrument offered in evidence was not, as appellant's counsel suppose, a copy of the deed, but was the second original, delivered to the vendee to serve him as evidence of his title ; and at the time it was executed would have been evidence of the sale of the land, without other proof of its execution than the certificate of the primary judge by whom it was made and delivered to the vendees. The protocol or first original became an archive in charge of the judge before whom the sale was consummated; and by the statute of December, 1836, organizing the County Court, it was required to be deposited in the office of the county clerk of Nacogdoches county. (See section 33 of act organizing inferior courts, approved December 20, 1836.) There was no authority of law authorizing its withdrawal from the custody to which it was committed by this statute. If it had, previous to the passage of this law, gone into the hands of the vendees, they might, no doubt, have had it proven up and recorded under the registration laws ; and it would then have been admissible in evidence, as any other registered instrument. (McKissick v. Colquhoun, 18 Tex., 148.) Or a certified copy of the protocol by the clerk of the County Court of Nacogdoches county, in whose custody it should and, as we must presume, did remain, under the act of January 19, 1839, (see Laws 1st Sess. 3d Cong., p. 47,) might have been recorded in the county where the land was situate; and such copy would also have been admissible in evidence as a recorded instrument. But it was the testimonio or second original, and not the first original or protocol, which the law of 1836 contemplated should be proved and recorded in the county

wherein the land lies.   (Laws 1st Cong., pp. 154, 155, secs. 33, 37.)

That the acknowledgment of his signature by the officer before and jointly with whom the protocol was executed, and by whom the testimonio was made and delivered to the party interested to whom it was to serve for a title, is sufficient to admit the testimonio to record, has been too long and well established by this court for question.   (Edwards v. James, 7 Tex., 372; Beaty v. Whittaker, 23 Tex., 526.)   The instrument to the introduction of which objection was made in the last of these cases, was the counterpart of that now under discussion.   It was the testimonio of an act of sale for a league of land, situated, at the time of trial, like this one, in Freestone county.   The sale was executed before Adolphus Sterne, primary judge of Nacogdoches county, November 14, 1836, who afterwards, as here, acknowledged his signature before the chief justice of Nacogdoches county; and on this certificate the testimonio was recorded, like this instrument, first in the county of Milam, on March 21, 1838.   True, it was afterwards also recorded in Freestone county; but not until after the deed to the defendant had been placed upon record in that county.   The court says: " The manner of proving the instrument for registration, in this instance, has been held by this court sufficient for that purpose; " though its admissibility did not depend upon its registration, as the party claiming under it, after the objections to it had been overruled, proved that Sterne and the assisting witnesses to the testimonio were dead, and that their signatures were genuine.

Though the act creating the county of Robertson was enacted before the record of this instrument in Milam county, it was proved that Robertson county had not been then organized, and that deeds for land in that part of Milam county out of which the county of Robertson was created were, at that date, still recorded in Milam county.

It is not controverted, that the legal effect of the deed, if

its authenticity was properly established, vested the title to the east half of the league sued for in the vendees, Sparks and Thorne; and as the objections to its introduction as evidence, as we have seen, were correctly overruled, and no countervailing testimony was introduced by appellants, it cannot be doubted that the jury were fully warranted in concluding that such was its effect.

Second. Four objections were made by appellants to the introduction in evidence of the bond of November 27, 1837, from Redin Gainer and Permelia Gainer, relied upon by appellees to prove the sale by Gainer to D. H. Love of an undivided half of the remaining half of the league of land granted him, which he then owned; but only one of these objections, if well taken, can be said to present any ground for the exclusion of the bond from the consideration of the jury. The others suggest matters for the consideration of the jury, in regard to the genuineness of the bond, and appellees' rights under it. We may, however, just as well consider them now as at any other time, as well as all other questions bearing upon this branch of the case, relied upon by appellants for its reversal.

On the 11th of August, 1874, nearly thirty-seven years after its date, and more than thirty years after its execution had been properly proven for record, and after it had been on record for nearly that length of time, as we may infer, William T. Gainer, one of the plaintiffs, made oath that he believed said bond to be a forgery, and that he believed the certificate of authentication upon which it was admitted to record was also a forgery. The affidavit of the belief of the forgery of the bond precluded appellees from introducing it in evidence as a recorded instrument, (Paschal's Dig., art. 3716,) and imposed upon them the necessity of proving its execution as at common law. But the last clause of the affidavit was not required or called for, and gave no additional force or effect to the first, and did not require of appellees additional proof of the execution of the bond, before it could go to

the jury. If proved as a fact, it might have been a circumstance to be considered by the jury in passing upon the genuineness of the bond. But it was not thus proved. On the contrary, appellees proved that the certificate was in the handwriting of the officer by whom it purported to have been made; and no effort whatever was made by appellants to rebut this evidence, or to sustain the charge insinuated in the affidavit, or to show a foundation for affiant's belief that it was forgery.

The bond was not offered in evidence as a recorded instrument, but its execution was proved beyond the strictest requirements of the common law. "An instrument," says Mr. Greenleaf, (vol. 1, sec. 569,) "when produced and freed from suspicion, must be proved by the subscribing witnesses, or one of them." Evidently, the suspicion from which the instrument offered must be freed before its execution may be proved by the subscribing witnesses, must arise from something apparent upon the face of the instrument. It is something of which the judge must take notice, and upon which he can act; and not matter of suspicion raised by extraneous evidence adduced by the opposite party, though proper to be considered by the jury in determining whether the instrument is genuine *vel non.* Where the subscribing witnesses are dead, or other sufficient reason is shown for their absence, and it appears the party by whom the instrument purports to have been executed is the person against whom it is sought to be used, proof of the handwriting of one of the subscribing witnesses is sufficient to admit it to be read as evidence to the jury. (1 Greenl. Ev., secs. 572, 575.) Here, although suspicion may have been cast upon the instrument by the proof offered by appellants to impeach its genuineness, certainly nothing of this sort appears upon the face of the bond. The identity of the purported obligor in the bond and the original grantee of the land, who was fully authorized to dispose of it without being joined by his wife, does not admit

·of question.   The handwriting of both the subscribing witnesses was fully and satisfactorily proved.

If their handwriting had not been proven,—as the bond when offered appeared to be more than thirty years old; came from the proper custody; was free from blemish by any apparent alteration; was shown to have been in the possession of the obligee but a few months after its date; had been placed upon record in the proper county for more than thirty years; had been acted upon; and possession of the land had been held by obligee, and many others claiming under him, for more than twenty years,—evidently it was admissible in evidence without either accounting for the subscribing witnesses, or proof of their handwriting, or of that of the obligors.   (1 Greenl. Ev., secs. 21, 570.)

It is not to be denied, that the discrepancy between the true name of Mrs. Gainer and that found attached to the bond, and the fact that she could write, and was never known by any of the witnesses who testified upon the subject to have had her name written for her by any one but herself, or to have executed an instrument by making her mark instead of writing her name, while this bond purports to have been ·signed by her by making a mark, are circumstances well calculated to throw strong suspicion upon its execution by her; but the conclusions to be drawn from these circumstances were addressed to the jury, and not to the court.   The law upon this point was correctly and clearly presented in the charge of the court; and, while admitting the full force of the evidence of appellant tending to impeach the genuineness of the bond, we think it cannot be denied that the countervailing testimony of appellees was amply sufficient to sustain the conclusion of the jury in its favor.

The objection that Love's possession was not under the bond, but under the deed made by Karner, as attorney in fact for Gainer, in satisfaction of the bond, does not require serious notice.   If the power of attorney under which Karner acted was valid, Love went into possession and held

under and by virtue of the bond, as well as the deed executed in accordance with its stipulations. If the power, as appellants maintain, was invalid, the deed was not a discharge of the bond, and it was certainly as efficacious to support Love's possession as if he had entered upon the land directly under it, without any deed whatever having been made him. The objection that the bond was stale, or barred by limitation, when Love took possession of the land, goes to the legal effect and consequences which follow from such possession, instead of furnishing a ground for the exclusion of the bond as evidence. But we do not propose to place our answer to the objection on grounds so technical. If the objection had been made in the proper manner, by an instruction as to the legal effect of the evidence, it would have presented no better reason for the reversal of this judgment than it does as here made. It may be true, that, under the common law, a bond for title, even when it shows upon its face that the purchase-money has been fully paid, vests in the purchaser only an equitable title; that the vendee, by delay, may lose his right to demand of the vendor the legal title, which in such case he holds in trust for the vendee; that the vendee's right under the bond may become stale, or barred by the lapse of time; and that, by neglect and delay in acting upon the bond, he may become unable to enforce his superior equitable title, or to recover the land from the vendor, wrongfully in possession under the naked legal title. Or, even if we go still further, and admit that although the purchaser is in possession of the land under a bond for title which shows performance of the contract on his part, the vendor, after the lapse of sufficient time to bar an action on the bond, may, by reason of its superiority at common law to the equitable title, recover the land from his vendee; though certainly we know of no authority to support such a proposition. Still this would not meet the present case. The doctrine which appellants attempt to invoke and apply to it springs from and has no foundation save in the technical distinctions of the common

law between legal and equitable titles. But the bond from Gainer to Love is not a common-law instrument. It was made before the introduction of the common law as the rule of decision in Texas. If, by the bond, any right to or interest in the land vested in Love, it was not a mere equity, which might become stale or be lost by his failure or neglect to assert it, or to demand some other character of conveyance. The purchase-price being fully paid, and the sale being absolute and unconditional, so was Love's title. A more formal conveyance, or one which would better serve as evidence of the sale, might be desirable, and, if stipulated for, might be enforced by the appropriate tribunal, if its aid were invoked in the proper time and manner; but when made, it would merely afford more formal or satisfactory evidence of the title already vested in the purchaser, and would not confer a different character of right to that by which he previously held. This being the nature of the contract at the date of its execution, it was not affected or changed by the subsequent introduction of the common law, with its technical distinctions between legal and equitable titles. (Hanrick *v.* Barton, 16 Wall., 174.)

Love, from the date of his purchase and payment, was the absolute owner of the land. His delay in taking possession in no way lessened his right or affected his title, there being no one in adverse occupancy of it.

An absolute title to an undivided half of the western half of the league being vested in Love by the title bond, it is unnecessary for us to examine the questions discussed by counsel, touching the validity of the deed of May 31, 1851, by Karner, as the attorney of Gainer, unless it should become necessary to determine whether Love, and those holding under him, are forced to rely upon this deed to maintain title to the specified part of the league which they claim, or are entitled merely to an undivided half of the western half of it, as stipulated in the bond. And this, evidently, will depend upon the fact, whether appellants are entitled to the whole or

any part of the remaining quarter of the league claimed by some of the appellees under the deed from Gainer to Cartwright.

It is only necessary to add, in adverting to what has been said upon this branch of the case, that the court did not err in overruling the objections to the copy of the deed from Love to Gainer for the lot and shop in the town of San Augustine. Appellants did not except to the notice to produce the original deed for want of time to enable them to do so, but merely because of the distance at which they lived from the place where the court was sitting; but they neither alleged that the original was not accessible to them, when notified to produce it, nor that it was then beyond their reach, but that they would be able to produce it at a subsequent day. The objection, that the deed was wholly irrelevant to the issues involved in the case, is untenable. It unquestionably tends to support the genuineness of the bond to Love, and to prove that he had fully paid for the land sold him by Gainer.

*Third.* On the 17th of April, 1840, Gainer executed and delivered to Matthew Cartwright a deed, whereby, in consideration, as recited in the deed, of the payment to him of the sum of one thousand dollars, he purports to convey to said Cartwright an undivided one-half of the east half of the league of land here in controversy. To the introduction of this deed appellants made no objection, but have assigned as error the instructions of the court, under which the jury by their verdict found, in effect, that it was the intention of Gainer to sell and Cartwright to buy an undivided half of the west half of said league; and that the land intended to have been conveyed was mistakenly described in the deed as the "undivided half of the east half." The appropriateness of the charge or correctness of the verdict is not questioned by appellants, if there was sufficient evidence upon which to predicate the one and to sustain the other; but this they deny; and unless they are able to make good their denial,

they have no cause to complain of the judgment, or to ask for its reversal.

Unquestionably, there is no direct evidence of the alleged mistake; but evidently it was permissible to prove it by circumstantial evidence, just like any other fact upon which the jury were called to pass. Were there, then, any facts and circumstances in evidence tending to prove it, of sufficient pertinency to warrant the charge of the court? We think there were. More than three years prior to the date of the deed to Cartwright, Gainer had parted with all his interest in the east half of the league. There is nothing in the record to raise an inference that he ever denied the validity of his conveyance to Sparks and Thorne, or that he had repudiated or disputed their right to the land which he had conveyed to them. After making this conveyance he only claimed one-half of the league. When talking with Karner about making the division for Love, he seemed to suppose that it was the east half of the league from which Love's quarter was to be taken. The inference is not unnatural, that he may have forgotten which half of the league had been conveyed to Sparks and Thorne. When this deed to Cartwright was made, Gainer owned but an undivided half of the west half of the league. If he intended to sell any other part of it, he designed, as we would have to infer from the evidence in the record, to perpetrate a fraud. This surely should not be presumed. It does not appear that he ever, subsequently to the executing of this deed, paid taxes upon any part of the league, or looked after or manifested any interest in it whatever; and though, subsequently, so hardly pressed as to be forced to appeal to his daughter for pecuniary assistance to return to Texas, he makes no allusion to any interest which he still had or claimed in it. So far as shown, he made no effort, though from his own statements utterly broken in health and fortune, to make the valuable interest which it is now claimed he had in this land of any avail to him. In view of these facts, we think it

cannot be said that there was no evidence to warrant the charge of the court or to support the verdict.

The judgment is affirmed.

AFFIRMED.