Opinion delivered May 11, 1887.

No. 5833.

F. E. WILSON ET AL. v. EMMA J. SIMPSON ET AL.

1. EQUITY—CONTRACT.—A bond was given in 1837 in the sum of five thousand dollars, conditioned that the obligor should make to the obligee a title to two-thirds of a league and labor of land, "the remaining portion" of the head right to which he believed himself entitled, but to which no certificate or evidence of right had then issued. In 1838 a certificate issued to the obligor for one league and labor of land as the head of a family. It was located for the obligor in this bond, and the patent issued in his name in 1852. In a suit brought by the heirs of the obligee in 1885, against parties in possession as purchasers from the heirs of the obligor, *held:*

(1) In order to entitle the heirs of the obligee to recover the land, they should establish, 1, a consideration; 2, a trust in the certificate, and, 3, through this, a trust in the land.

(2) A proceeding to enforce specific performance of the executory contract evidenced by the bond, not having been begun in proper time, it was barred as a stale demand.

(3) In the absence of evidence that the certificate was located for the obligee or his heirs, a two-thirds interest in the land would be the utmost they could have recovered under any circumstances.

2. BILL OF COSTS—EXECUTION.—Article 1420, Revised Statutes, applies only to pending suits up to the adjournment of a term of court in which no final judgment has been rendered. Article 1420b gives a remedy for the collection of costs incurred before final judgment, in case a demand for their payment has not been complied with, but no remedy is given by either article for costs incurred after the close of the term at which

final judgment is rendered. A bill of costs incurred after final judgment, and the end of the term, and made by reason of suing out a writ of error, does not have the force and effect of an execution, and any sale made thereunder, as under execution, is void.

3. CASE DISTINGUISHED.—This case distinguished from Gainer v. Cotton, 49 Texas, 119.

4. AUTHENTICATION.—An acknowledgement of a deed before a recorder who is ex-officio notary public of another State, and his certificate thereon, was sufficient under Paschal's Digest, article 7418.

5. ADMISSIONS.—The declarations of one who has executed an instrument purporting to convey his interest in property, when made after such conveyance, are not admissible in evidence in derogation of the title attempted to have been thus conveyed.

APPEAL from Comanche. Tried below before B. D. Shropshire, Esq., special judge.

*Fleming & Moore* and *N. R. Lindsey,* for appellant, on laches and stale demand, cited Downs v. Porter, 54 Texas, 59; Yeary v. Cummins, 28 Texas, 91; Glasscock v. Nelson, 26 Texas, 150; Nichols v. Pilgrim, 20 Texas, 428; Newsom v. Davis, 20 Texas, 419; Tumlinson v. York, 20 Texas, 694; Earley v. Sterrett, 18 Texas, 113; Short v. Price, 17 Texas, 397; Holeman v. Criswell, 15 Texas, 394; Smith v. Hampton, 13 Texas, 460; DeCordova v. Smith, 9 Texas, 147.

On the question of title secured by the sale to satisfy costs, they cited Revised Statutes, articles 1420 a, 1420 b, and 1420 c; Davis v. Rankin, 50 Texas, 279; Ayers v. Duprey, 27 Texas, 601; Sydnor v. Roberts, 13 Texas, 598; Earle v. Thomas, 14 Texas, 583; Howard v. North 5 Texas, 290.

That title vested in the heirs of Harris as a legal, and not an equitable title, they cited Downs v. Porter, 54 Texas, 59; Yeary v. Cummings, 28 Texas, 91; Glasscock v. Nelson, 26 Texas, 150; Nichols v. Pilgrim, 20 Texas, 428; Newsom v. Davis, 20 Texas, 419; Tumlinson v. York, 20 Texas, 694; Earley v. Sterrett, 18 Texas, 113; Short v. Price, 17 Texas, 397; Holman v. Criswell, 15 Texas, 394; Smith v. Hampton, 13 Texas, 460; DeCordova v. Smith, 9 Texas, 147.

*Ward & Charlton,* for appellee, cited Hutchins v. Bacon, 46 Texas, 415; Hatchett v. Conner, 30 Texas, 111; Garca v. Galvan, 55 Texas, 55; Revised Statutes, articles 1420 a, 1420 b, and 1420 c; Simpson v. Trimble, 44 Texas, 311; Gainer v. Cotton, 49 Texas, 119, 120.

GAINES, ASSOCIATE JUSTICE. On the eighth day of October, 1837, Epps D. Payne executed to W. H. Harris a bond in the sum of five thousand dollars, conditioned as follows: "That if the above bound Epps D. Payne, his heirs, executors or administrators or assigns, shall make or cause to be made unto the said Wm. H. Harris, his heirs or assigns, a good and sufficient warranty bona fide title to the remaining part of my own headright of land to which I am entitled as the head of a family, under the Constitution and laws of this Republic, viz., two-thirds of a league and labor of land. All expenses on the same to be paid by the said Payne or his deputy or agent, so soon as I, myself, can obtain one from this government. Now if the above bound Epps D. Payne shall well and truly perform, fulfil and accomplish unto to the said Wm. H. Harris the titles as above mentioned, then and in that case this bond or obligation is to be null and void or else to be and remain in full force and virtue." On the second day of February, 1838, a certificate for a league and labor of land was issued to Payne as the head of a family by the board of land commissioners of Sabine county. This certificate was located on the two-thirds of a league of land in controversy in 1857. The field notes recite that the location was made for Payne, and the patent which is dated in 1852, issued in his name.

This suit was brought by the heirs of Harris and of his wife to recover of appellants, who were in possession of the premises, claiming under conveyances from the heirs of Payne, the land so located by virtue of the Payne certificate.

The issues involved in this appeal will be determined by the effect which is to be given to the title bond from Payne to Harris, as an instrument of conveyance.

In Gainer v. Cotton, 49 Texas, 119, a bond similar in form to the one before us was held not merely an executory contract for the sale of land, but a conveyance which passed, *proprio vigore*, the legal title. We do not doubt the correctness of that decision. The laws of Mexico were still in force in Texas when the bond in that case was executed. It is apparent from its face that the parties to it were accustomed to the common law forms of conveyancing, and that in making it they were acting upon the idea, then prevalent, that the claimant of land could not convey it by deed before the issue of the final title from the government. The bond shows that its consideration was the executed transfer of a lot from the obligee to the obligor, and clearly manifests the.

intention of the parties that the obligee was to become immediately entitled to a half interest in the obligor's half of a league of land, which is therein described. These embrace all the elements of a sale under the Mexican law, and hence the execution of a deed in pursuance of such a bond would add nothing to the validity of the title. The court accordingly held, in that case, that the instrument, though in the form of a bond for title, was in itself an effective conveyance of the legal title, and that, therefore, the plea of stale demand could not be set up against one claiming under it.

But there is a very broad distinction between that and the case we have before us. Here, when Payne executed the bond to Harris, he had no land to convey. He had a right to land under the laws of the republic; but as yet had received no certificate as an evidence of that right. The contract seems based upon the idea that the obligor had received a portion of land, and was entitled to a two-thirds of a league more, and he binds himself to procure a certificate for this amount of land at his own expense and to make title to it to the obligee.

· The certificate, however, issued for the whole league and labor. This gave Harris an undivided interest of two-thirds in the certificate. Now, the location having been made and the patent having issued in the name of Payne, we think it quite apparent that whatever right the heirs of Harris had in the land was an equitable right, and their sole remedy was in a court of equity. The claimants under the bond would have no standing whatever in a court of law, under a system of jurisprudence, where law and equity are administered in separate forums; and they could obtain no relief even in a court of equity without proving that the bond was supported by a valuable consideration. (Short v. Price, 17 Texas, 397; Downs v. Porter, 54 Texas, 59; Early v. Sterrett, 18 Texas, 113.) In several respects the case is wholly unlike that of Gainer v. Cotton, supra. In that case the consideration clearly appeared on the face of the bond to have been executed. The obligor was, at the time, the owner of the land which he undertook to convey. Hence, it was held a conveyance under the Mexican law, which knew no distinction between the legal and equitable title. But in the case before us, the contract is executory; it is to make title to the certificate when issued.

In order for the heirs of the obligee to receive the land, it would be necessary for them to prove a consideration, then to

establish a trust in the certificate, and through this a trust in the land. This, as we take it, would be an equitable proceeding, and one to which, if not instituted within proper time, the plea of stale demand would be applicable. In this view of the law we think we are well sustained by numerous authoritative decisions of our own court. (McFaddin v. Williams, 58 Texas, 625; Flemming v. Reed, 37 Texas, 152; Yeary v. Cummins, 28 Texas, 91; Glasscock v. Nelson, 26 Texas, 160; Smith v. Hampton, 13 Texas, 459; Johnson v. Newman, 43 Texas, 628; Mitchell v. Sheppard, 13 Texas, 483.

The court below took a different view of the instrument, and charged the jury as follows:

"The jury is further charged that the plaintiffs having introduced in evidence a title bond and obligation in writing, dated the eighth day of October, 1837, from Epps D. Payne to W. H. Harris, which was duly recorded in Comanche county ——— day of ———, 1861, also a land certificate issued by the board of land commissioners of Sabine county, Texas, to Epps D. Payne, for a league and labor of land, dated second of February, 1838, also field notes of a survey made under said certificate and made by locator of certificate on ——— day of ———, A. D. ———, also the patent from the State of Texas to Epps D. Payne, his heirs or assigns, by virtue of said certificate and location dated ——— day of ———, 1852, that the legal effect of such evidence is to vest title to the land in controversy in the heirs of William H. Harris at the date of the issuance of said patent, and the jury are charged that said title so vested in the William H. Harris heirs in 1852, the date of patent, is a legal title as contradistinguished from an equitable title, and the jury are instructed that the doctrine of stale demand can not be urged and plead against plaintiffs in this suit."

This charge is assigned as error, and it follows, from what we have said, that, in our opinion, the assignment is well taken. The facts stated in the instruction did not invest the appellees with a legal in contradistinction to an equitable title, and the plea of stale demand was applicable to the case. It is to be noted here that the certificate having issued to Payne for a league and labor, Harris's claim in it was only that of a two-thirds undivided interest. It is not positively shown by the record who caused the location of the land in controversy. Harris's heirs had the right to locate their part of the certificate separately, and to hold the location as their interest in severalty. (Farris v.

Gilbert, 50 Texas, 351.) But it is not shown that they did this. Hence, it would seem that, in the absence of some proof, that the location was made expressly for them, a two-thirds interest in the land would be the utmost extent of their lawful demand, under any circumstances.

This point, however, was not made in the court below—both parties seeming to have acted upon the theory that the heirs of Harris were entitled to the entire interest in the land if they were entitled to any part of it.

The record shows that, before the bringing of this suit, the plaintiffs herein had instituted a previous action for the recovery of the same land, in which they took a nonsuit. An execution for the costs issued against them, and was returned satisfied. Subsequently they sued out a writ of error, but did not prosecute it by filing the transcript in the Supreme Court. After the writ of error was issued, the clerk of the district court placed in the hands of the sheriff a certified copy of a bill of costs (consisting wholly of costs incurred by reason of the proceedings in error) under which the premises in controversy was sold as the property of the plaintiffs. The court below held that this sale passed no title, and we think this ruling correct. The authority for issuing a bill of costs which shall have the effect of an execution is found in articles 1420a, 1420b, and 1420c of the Revised Statutes. Without these enactments the officers of the court had an ample remedy for the collection of their costs at each term, in all cases, disposed of upon final trial, and when no appeal was taken. The purpose of these provisions was to enable them to obtain their fees, where the cases were continued, or where execution upon the judgment was suspended by an appeal. Article 1420a reads as follows: "It shall be lawful for clerks of the district and county courts and justices of the peace to demand payment of all costs due in each and every case pending in their respective courts, up to the adjournment of each term of the court." This was evidently intended to apply to pending suits only, and not to those in which final judgments should be rendered. Article 1420b gives the remedy for the collection of these fees, in case the demand is not complied with, and in order to prevent the delay which would be caused by an appeal, it further provides that the removal of the cause by appeal shall not prevent the issuing of an execution for costs at the end of the term at which the appeal is taken. The remedy is nowhere extended to any costs which accrue

after the end of the term of the court at which the final judgment is rendered.

We know of no rule that authorizes us to extend the operation of a summary remedy of this character beyond the clear import of the language of the statute. The bill of costs by virtue of which the sale in question was made, was for fees which accrued after the end of the term at which the final judgment was entered, and which were incurred by reason of the suing out of a writ of error. The statute does not give such a bill of costs the force and effect of an execution; and hence the sale was unauthorized by law and was absolutely void.

The foregoing, as we take it, are the leading questions in the case before us, and for that reason we have discussed them out of the order in which they are presented by the brief of counsel. We will briefly consider such other questions presented by proper assignments as we think likely to arise upon another trial. The first assignment is, that the court erred in admitting in evidence the bond from Payne to Harris over defendant's objection that it was not properly proved for record. Upon the authority of Coryell v. Holmes, 3 Texas Law Journal, 481 (same case, 58 Texas, 685), we must hold the bond for title sufficiently authenticated for registration, and that the court did not err in admitting it in evidence.

We see no error in the ruling of the court complained of in the second assignment. Caroline Gooch being a married woman, and her power of attorney not being acknowledged as required by law, the court was correct in excluding the power of attorney and the deed made under it from the jury in so far as they were offered as evidence of a conveyance of Mrs. Gooch's interest in the land.

The third assignment of error complains of the exclusion from the jury of the deed of Smith and wife to Stephens and others. The deed appeared to have been acknowledged before an officer in the State of Louisiana, who styled himself recorder, and ex-officio notary public. It was objected to on the ground that it was not acknowledged before an officer duly authorized by law. The acknowledgment was taken in 1878. The law then in force (Pas. Dig., art 7418), as now, conferred authority upon notaries public in other States of the union to authenticate conveyances for the purposes of registration, and it seems to us that the authority of a notary, who is lawfully such by virtue of his holding some other office, is quite as ample as if he were notary by direct

appointment. Such is virtually the decision in Butler v. Dunagan, 19 Texas, 559, where it was held that an acknowledgment taken before a primary judge was good, by reason of his being ex-officio a notary public, although the statute did not in terms authorize primary judges to take such acknowledgments, and the officer did not sign as a notary public. We think, therefore, that the court erred in excluding the deed in question.

The admissions of the declarations of John P. Payne is complained of in the sixth assignment of error, and we think that the evidence ought to have been excluded. We are of the opinion that when he made the declarations he had parted with his interest in the property, and that his admissions in derogation of the title were not competent evidence against third parties. His power of attorney, under which his interest was conveyed, speaks of that interest as derived from his father's estate, and by conveyance from the heirs of Margaret E. Pye—but each interest is spoken of as an undivided one-third interest in the entire tract. This authorized his attorney to convey two-thirds of the land, which they did, and this being all to which he was entitled as the heir, both of his father and of his mother, and as grantee from the heirs of Mrs. Pye, necessarily conveyed his entire estate in the premises in controversy.

Appellants' sixth assignment of error fails to point out wherein the court erred in refusing to give the fifteen special charges asked by them, and is, therefore, not in accordance with the rules, and will not be considered.

For the errors pointed out the judgment will be reversed as to appellees, Mrs. Simpson and Mrs. Hardeman, and remanded for a new trial as to them.

*Reversed and remanded.*